IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RALPH YEAGER,

        Plaintiff,

vs.

        Case No. C2-05-950
        Judge Edmund A. Sargus, Jr.
        Magistrate Judge Terence P. Kemp

UNION COUNTY COMMISSIONERS,
    et al.,

        Defendants.

## OPINION AND ORDER

As set forth in the Amended Complaint, Plaintiff, Ralph Yeager, is a farmer in Union County, Ohio and owner in fee simple of real property located therein. Defendants are the Commissioners of Union County, sued here in their official and individual capacities ("Commissioners"), the Union County Engineer, also sued here in his official and individual capacities, and Plaintiff's neighbors, Richard D. and Iva Eileen Carpenter ("Carpenters").[1] This matter is now before the Court for consideration of the County Defendants' Motion for Judgment on the Pleadings and the Carpenters' renewed Motion to Dismiss. For the reasons that follow, the County Defendants' Motion for Judgment on the Pleadings is granted; the Carpenters' renewed Motion to Dismiss is denied as moot.

### I.

For purposes of these Motions, the Court takes the following allegations from Plaintiff's Amended Complaint as true. The Court notes, however, that Defendants vigorously deny many of

---

[1] In his Amended Complaint, Plaintiff Yeager also sued John Does 1 through 10, who are unknown Union County employees who allegedly participated in the acts giving rise to the instant lawsuit.

the allegations and maintain that several of the facts alleged in the Amended Complaint are false. The Court, nonetheless, accepts the allegations as true, as it must, as it considers the merits of Defendants' Motions.

Plaintiff Yeager owns 270 acres of land in Union County, of which 170 acres are across the road from the Carpenters' property. The Carpenters own 200 acres. The Carpenters' and Yeager's properties are divided by a two-lane road known as Osborne Road, which Plaintiff alleges is operated and maintained by the Commissioners. Each of the culverts located on either side of Osborne Road are prone to surface-water ponding and flooding.

Osborne Road runs north-south. Three culverts run underneath and perpendicular to the road in a east-west direction. To alleviate flooding in this water collection "bowl," a system of drainage tiles has existed on the east side of Osborne Road for more than 21 years. This system of drainage tiles lies largely on the Carpenters' land, but a portion of the tile system extends into the Union County right of way on the east side of Osborne Road. The tiles within the right-of-way tie into the main tile system that extends onto the Carpenters' land, and serves to drain water away from Osborne Road in this flood-prone section of highway. Because surface waters flow from Plaintiff's property in an easterly direction through the culverts running under Osborne Road, the system of drainage tiles alleviates the flooding hazard to Osborne Road and drains excess surface waters from both Plaintiff's and the Carpenter's properties.

A second outlet for surface waters is the north-south culvert that lies on the west side of Osborne Road. When water has risen to a certain level, this culvert carries the excess north, along Osborne Road, through a rise in the land to a natural drainage ditch due north of the culvert. This culvert, like the system of drainage tiles, also alleviates ponding and flooding on both Plaintiff's and

the Carpenters' properties.

Yeager alleges that the Carpenters constructed a gravel dam or levy and other obstructions with the assistance of, and in a conspiracy with, the Union County Engineer. Yeager alleges that the levy impedes the flow of water emerging from one of the east-west culverts. Yeager contends that the Carpenters, in conspiracy with the County Engineer, caused the levy to be constructed with the intent and effect of flooding his property. He believes that the Carpenters have severed the underground drainage tiles and both the north and south culverts. The County Engineer has not ordered the Carpenters to remove the obstructions or otherwise arranged for county maintenance to correct the problem.

According to the Amended Complaint, the County Engineer performed his alleged work in December 2001 and January 2002, including an extension of one of the east-west culverts and adding a drop inlet to it. (Amend. Compl., ¶ 32.1; 32.b.) Approximately one week after the County completed its work, the Carpenters removed the drop inlet placed at the south culvert. Yeager characterizes this act as "sabotage," and alleges that the Carpenters did it with the knowledge and approval of the County Engineer. (Amend. Compl., ¶ 32.d.) Yeager also contends that the County Engineer obstructed the north-south culvert by piling dirt at the inlet end with the specific purpose of denying him a drainage outlet.

Yeager alleges that the County Engineer knew or should have known that the removal of the drop inlet would cause his property to be flooded. Plaintiff also alleges that he became aware in April or May of 2002 that the County's drainage improvements had ceased to function as a result of the Carpenters' acts. (Amend. Compl., ¶ 77.)

Yeager contends that the Commissioners had a duty to reasonably supervise and control the County Engineer and failed to do so. He alleges that the breach of this duty constitutes a ratification by the Commissioners and the County Engineer of the "deliberate, malicious, reckless and wanton" conduct by the Carpenters. (Amend. Compl., ¶ 35.) According to Yeager, the actions of the Commissioners and the County Engineer were the result of an official policy by virtue of the fact that their actions were deliberate, and that they are responsible for establishing policy.

On November 6, 2003, Plaintiff filed a civil action against the Carpenters in the Union County Court of Common Pleas alleging damage caused by the drainage problems. On July 12, 2004 Yeager voluntarily dismissed this suit with prejudice. On September 21, 2005 the Carpenters filed suit against Yeager in the Union County Court of Common Pleas (hereinafter "state case") alleging drainage damage caused by changes Yeager made to his land in late 2004 and 2005. On October 18, 2005 Yeager filed suit in this Court ("federal case") against Carpenter and various Union County officials, essentially restating the same claims that were dismissed in the first state action. On October 22, 2005, Yeager filed a counterclaim against the Carpenters in the state case restating verbatim his claims in the federal case. On March 31, 2006 Yeager voluntarily dismissed his counterclaim in the state case. On April 10, 2006, the state court dismissed the Carpenters' 2005 case, without prejudice, as a sanction for a discovery violation. The Carpenters filed the current renewed Motion to Dismiss in this federal case on April 25, 2006.

## II.

### A. County Defendants' Motion for Judgment on the Pleadings

The County Defendants move for judgment on the pleadings with respect to Plaintiff Yeager's federal claims. Each of Plaintiff's federal claims arise under the Constitution and are

brought pursuant to 42 U.S.C. § 1983. Yeager contends that the County-Defendants[2] violated his Fifth and Fourteenth Amendment substantive due process rights. Further, Yeager maintains that, by assisting the Carpenters with constructing the dams and gravel levy, the County Engineer violated of the requirements of Ohio Rev. Code Chapters 1515 and 6131, which relate to private petitions for use of public resources to improve drainage. From this purported violation of state law, Yeager contends that the County Defendants deprived him of Fourteenth Amendment procedural due process because, prior to undertaking the drainage improvements, he received no "predeprivation notice and opportunity to be heard." Furthermore, Yeager asserts that he has a prescriptive easement, which the government has taken without just compensation. According to Yeager, the actions of the Carpenters in severing access to the draining system, coupled with the fact that the County Engineer did not order the Carpenters to repair it, constitute a taking of property without just compensation in violation of the Fifth Amendment.

Plaintiff's federal claims are for deprivations of Fifth and Fourteenth substantive due process, deprivation of Fourteenth Amendment procedural due process protection of rights created by state statute, and Fifth Amendment taking of property by flooding and a taking of prescriptive easement. Each of Plaintiff's claims arises under 42 U.S.C. §1983. Section 1983 encompasses the "deprivation of any rights, privileges, or immunities secured by the Constitution...." *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), superseded on other grounds, 872 F.2d 772 (6th Cir. 1989)(citing *Monell v.*

---

[2] Although the they are not named in any official capacity, Plaintiff's has alleged in his Amended Complaint the Carpenters acted "under color of State law" because their acts were accomplished with the aid, support or tacit approval of the County Engineer. (Amend. Compl., ¶ 31.) While the Court draws no legal determinations as to whether the Carpenters were state actors, the conclusions set forth above apply to the whole of Plaintiff's Section 1983 claims, including those putatively asserted against the Carpenters.

*Dept. of Social Services*, 436 U.S. 658 (1978)). "The Supreme Court has never recognized a cause of action arising directly under the Constitution where §1983 was available as a remedy." *Id.* at 500. Thus, "where a plaintiff states a constitutional claim under 42 U.S.C. §1983, that statute is the exclusive remedy." *Id.* at 499.

Defendants contend that Plaintiff's claims are barred by the appropriate statute of limitations. They therefore seek judgment as to all federal claims under Section 1983, and dismissal of all state law claims without prejudice.

### 1. **Standard**

The standard of review applicable to a motion for judgment on the pleadings under Fed. R. Civ. Pro. 12(c) is the same de novo standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Market*, 249 F.3d 509, 511-12 (6th Cir. 2001). Thus, in reviewing Defendants' Motion predicated on the affirmative defense of statute of limitations, the Court construes the Amended Complaint in the light most favorable to the Plaintiff, accepts all of the factual allegations as true, and determines whether the Plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief. *Id.*

### 2. **Analysis**

"The appropriate statute of limitations for 42 U.S.C. §1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual." *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989). Browning, like Yeager here, asserted claims for denial of due process and alleged that county officials selectively enforced low-load limits on their trucking business and failed to maintain certain county roads with an intent to force the company out of business. Even though no bodily injury was

at issue, the Court concluded that the appropriate statute of limitations for a Section 1983 action arising in Ohio is statute that requires actions for bodily injury to be filed within two years after their accrual. *Id*. The two year statute of limitations applies to all Section 1983 actions, including those involving taking without just compensation under the Fifth Amendment. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).

Yeager alleges that the County Engineer knew or should have known that his work would cause flooding. Thus, with respect to the work actually performed by the County Engineer, Yeager had two years within which to sue from the time the County Engineer performed his work. According to the Amended Complaint, the County Engineer performed his work sometime in December 2001 and January 2002. Thus, Yeager had until January 2004 to bring suit.

With respect to the County Engineer's alleged failure either to repair the damage caused by the Carpenters, or to order the Carpenters to repair the damage, Yeager alleges that the County Engineer knew of the damage no later than May 2002. Yeager had until May 2004 to bring this claim under Section 1983.

Yeager did not file his original Complaint until October 18, 2005. Plaintiff's claims under Section 1983 are time barred unless the statute of limitations began to run sometime after these stated triggering events.

In response, Yeager asserts that the County officials' offending actions are on-going infringements of his constitutional rights and thus constitute continuing violations. He maintains that the County officials' tortious acts include those taken in 2001 and 2002 and, in addition, result from illegal County policies that continue to deprive him of his property interest and due process rights.

In particular, Yeager contends that the County's illegal refusal to enforce certain statutes is a "continuing violation" and that, as a result, the limitations period will not start to run until the County stops refusing to enforce Ohio Rev. Code §§ 5589.06 and 5543.09.

Ordinarily, the limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)(quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984)). "'In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991)).

Torts of a continuing nature, however, are the exception. The Supreme Court recognized the doctrine of continuing violations as it relates to statutes of limitations in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n. 15 (1986)(concluding that action not time-barred due to "a continuing violation . . . which inflicted continuing and accumulating harm"). Plaintiff relies on *Hanover*, and, more particularly, *Kuhnle*, in asserting a continuing violation.

### a.) Discrete Acts

The Court first concludes that the specific tortious acts described in Plaintiff's Amended Complaint, including the County officials' alleged conduct in (1) blocking off a north-south culvert, and (2) assisting the Carpenters to construct a gravel obstruction, were discrete acts that occurred at a discoverable and discernable time. As such, they do not constitute continuous violations for purposes of the statute of limitations. Although Plaintiff claims that these violations cause continual flooding, he knew or had reason to know of the injury which is the basis of his action in 2001 and 2002. His claims for these discrete acts, filed with his Complaint in 2005, therefore, are barred by

the two-year statute of limitations.

### b.) Alleged Continuous Violations

Plaintiff alleges that the County Defendants' inaction and refusal to enforce the provisions of the applicable statutes constitute a continuing violation. Plaintiff asserts that his state law claims as set forth in his Seventh, Eighth and Ninth Counts of the Amended Complaint, for failure to perform duties imposed under Ohio Rev. Code § 5589.06 and 5543.09 offends the United States Constitution and present claims for on-going Section 1983 claims.

Plaintiff has not demonstrated a continuing violation. The Ohio statutes, which, according to Plaintiff, the Defendants continue to violate, do not apply to the facts contained in his Amended Complaint. As such, because neither Ohio Rev. Code § 5589.06 nor 5543.09 applies, Plaintiff's argument that the continual violation of them do not support his federal claims.

Ohio Rev. Code §5589.06 prohibits obstruction of a ditch or watercourse along a public highway and directing water from adjacent land to or upon a public highway. The provision appears in the Chapter of the Revised entitled "Offenses Relating to Highways." Violations of the statute by creating such obstructions or diversions are a misdemeanor of the third degree. Ohio Rev. Code § 5589.99. *See Becker v. Schaull*, 62 Ohio St.3d 480 (1992)(noting O.R.C. §5589.06 is intended to apply where water threatens a road).

Plaintiff does not allege that water threatens the road between his field and the Carpenters'. Even if the Carpenters had violated Ohio Rev. Code§5589.06 by flooding Yeager's fields as opposed to a road, it is not incumbent upon any of the named County Defendants to prosecute; they have no authority or duty to do so under the statute. Ohio Rev. Code § 5589.06 does not create the duties Plaintiff would like to impose here, and he has no Section 1983 claim, continuous or otherwise,

based upon it.

Similarly, Plaintiff cannot demonstrate a continuous violation using Ohio Rev. Code § 5543.09 as the basis for his Section 1983 claim. Ohio Rev. Code § 5543.09 requires county engineers to supervise boards of township trustees as to the construction or re-surfacing of public roads. The chapter of the Revised Code in which this section appears is entitled "Roads-Highways-Bridges." The purpose of the statute is to maintain some county oversight over roads which are located in unincorporated parts of the county. By its language, the statute has no application other than to construction and re-surfacing of roads and related improvements. Plaintiff does not allege that there has been some inadequacy in the construction or maintenance of a road. The statute, therefore, has no application to this case and cannot support a federal constitutional claim.[3]

Plaintiff has not demonstrated a "continuing violation" of the United States Constitution. As such, Plaintiff's claims under Section 1983 are barred by the statute of limitations. The County Defendants' Motion is accordingly **GRANTED**.

3.    **State law claims**

Because the Court disposes of all of Plaintiff's federal claims by this Order, the Court declines to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's state law claims are **DISMISSED** without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed

---

[3]    In his Memorandum in Opposition, Plaintiff suggests that a county engineer has a general duty under Ohio Rev. Code § 5543.09 to repair damage to drainage facilities occurring at or near county roads. The statute, however, imposes no such duty. Moreover, Plaintiff has provided no legal support the United States Constitution imposes such a duty as to support his Section 1983 claim.

before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

**B.     Carpenters' renewed Motion to Dismiss**

The Carpenters move to dismiss the Amended Complaint against them on the basis of *res judicata* insofar as Plaintiff's claims against them are the subject of litigation in the state court action pending in the Court of Common Pleas of Union County, Ohio.[4] Alternatively, the Carpenters ask the Court to abstain from adjudicating what are clearly state law issues.

Because the Court disposes of this case in the manner set forth above, it need not rule on the Carpenters' Motion. The Motion is therefore **DENIED AS MOOT**.

**III.**

For the foregoing reasons, the Commissioners' Motion for Judgment on the Pleadings (Doc. #24) is **GRANTED**. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. The Carpenters' renewed Motion to Dismiss (Doc. #37[5]) is **DENIED AS MOOT**. The Clerk is directed to enter judgment in favor of Defendants, and to remove this case from the Court's docket.

**IT IS SO ORDERED.**

9-29-2006
DATED

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[4]     The Court notes that 2005 Union County case was dismissed but the dismissal was expressly "without prejudice." The Carpenters represented in their Reply memorandum that they planned to refile the case. The present status of the 2005 case in state court is not in the record.

[5]     The Carpenters' original Motion to Dismiss (Doc. # 9), filed prior to Plaintiff's Amended Complaint and their renewed Motion, is **DENIED AS MOOT**.